Filed 10/7/14  Becton, Dickinson and Co. v. Superior Court CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| BECTON, DICKINSON AND COMPANY,<br><br>Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SAN DIEGO COUNTY,<br><br>Respondent;<br><br>---<br><br>QUIDEL CORPORATION,<br><br>Real Party in Interest. | D066518<br><br>(San Diego County<br>Super. Ct. No. 37-2013-00071216-CU-CO-CTL) |

PROCEEDINGS in mandate after superior court granted motion to enforce third party subpoena.  Timothy Taylor, Judge.  Petition granted.

Raymond W. Bertrand, Paul Hastings LLP, for Petitioner.

No appearance for Respondent.

Julie R. Trotter, Call & Jensen, for Real party in interest.

Petitioner Becton, Dickinson and Company (BD) challenges an order granting the motion of real party in interest Quidel Corporation to compel responses to its subpoena of BD's business records.  BD contends the order compels it to produce documents

containing trade secret information to its direct competitor and seeks to stay the order until after respondent court hears and decides BD's pending motion for a protective order. We grant the petition.

## FACTUAL AND PROCEDURAL BACKGROUND

Quidel filed a civil suit against its former employee John Andrew Hoffman after Hoffman resigned from Quidel and began working for Quidel's competitor, BD. BD is not a party to this action. Quidel and BD both produce and sell a new type of influenza test and share distributors, customers and "key opinion leaders" (described by Quidel as doctors and professionals that influence sales of their products). In October 2013 Quidel filed a complaint against Hoffman asserting a single cause of action for breach of contract. Quidel alleges Hoffman breached his confidentiality agreement with Quidel by disclosing or using its confidential information and trade secrets in his employment with BD.

The parties have been engaged in discovery since the complaint was filed. On February 6, 2014, the court entered a protective order (Quidel/Hoffman Protective Order) allowing either party or a third party to designate documents as "confidential information" or "confidential-for counsel only." The order does not distinguish between outside and in-house counsel, and therefore permits attorneys employed by Quidel access to any information that is designated by Hoffman or a third party, such as BD, as confidential.[1]

---

[1] Under the Quidel/Hoffman Protective Order, a document designated as confidential can lose that designation only if a non-producing party successfully challenges the designation by motion.

2

On February 2, 2014, Quidel issued a subpoena to BD seeking the production of certain business records. BD timely served its objections to the requested documents, including on the ground that the subpoena sought confidential information protected by the trade secret privilege. Thereafter BD and Quidel engaged in meet and confer discussions concerning the production. Throughout those discussions BD maintained its objection to producing documents containing trade secrets. BD agreed to produce some of the requested documents and did so in April and June. Quidel was dissatisfied with the production and on July 16, 2014, filed a motion to compel additional documents responsive to its subpoena against BD. A hearing on the motion was scheduled for August 15, 2014.[2]

In its motion to compel against BD, Quidel contended BD's production of over 800 pages of documents was insufficient because the documents that were produced were missing pages and heavily redacted, and also because BD failed to include requested

---

[2] On May 23, 2014, Quidel filed a separate motion to compel production of documents against Hoffman. In opposition, Hoffman contended Quidel sought the production of BD's business records containing BD's confidential trade secret information. Citing a letter he received from BD's counsel cautioning him against production, Hoffman asserted that producing the requested documents would constitute a breach of his confidentiality agreement with BD. At the August 8, 2014, hearing on the motion, the court rejected Hoffman's assertion that the court had to apply a heightened level of scrutiny to the information requested, stating: "What you're trying to do . . . is engraft onto the breach of contract case the kind of discovery protections that the legislature felt were appropriate in trade secret litigation. [Quidel] didn't sue your client for violating trade secrets. It's a straight breach of contract." At the conclusion of the hearing the court granted Quidel's motion and ordered Hoffman to produce documents by August 28, 2014. The order states "Hoffman apparently contends that just because his new employer thinks the documents sought are secret, he may lawfully resist discovery. Not so. The court finds that Quidel has requested documents which are or may lead to admissible evidence, and that Quidel has otherwise justified the demands in question." Hoffman filed a petition for writ of mandate directing the trial court to vacate the August 8, 2014 order and we issued an order to show cause on September 12, 2014. (Case No. D066513.)

documents. Quidel asserted the Hoffman/Quidel Protective Order negated any concern BD might have over the disclosure of BD's trade secret or confidential information. In its opposition to the motion, BD asserted Quidel sought the production of documents that contained its trade secrets (including, among other things, marketing and sales strategies for its competing product) and that Quidel failed to meet the heightened showing required for the discovery of such information. BD also contended the Quidel/Hoffman Protective Order was not sufficient protection because the order would permit Quidel executives to view documents containing its trade secrets.

Before the hearing on Quidel's motion to enforce its subpoena, BD brought a competing motion for a protective order for the documents sought by the subpoena issued on February 2, 2014 and a second subpoena issued to it by Quidel on July 18, 2014. BD contended both subpoenas sought documents containing its confidential trade secret information. BD argued Quidel had not made the heightened showing required for the discovery of BD's trade secret information and sought an order relieving it from disclosure of privileged information. BD set its motion for hearing on the earliest date available, October 31, 2014.

At the August 15, 2014 hearing on Quidel's motion to enforce its February 2, 2014 subpoena, BD asked the court to advance the hearing on its motion for a protective order so that it could be heard before the court ruled on Quidel's motion. The court denied the request. The court also rejected BD's argument that the information sought was entitled to trade secret protection, stating "I had this conversation just last week, okay? And I thought I made my thoughts on that subject quite clear, that you can't [e]ngraft that whole [trade secret] construct on a straight-up breach-of-contract case."

4

BD reiterated its concern at the hearing that the Hoffman/Quidel Protective Order was not sufficient to protect its trade secrets, explaining Quidel's general counsel also serves as the firm's senior vice president of business development. Therefore, even at the "confidential-for counsel only" level of protection, a Quidel business executive would gain access to its confidential information. The court responded by stating that "someone better make a motion to modify the protective order" and suggested Quidel revise the Hoffman/Quidel Protective Order to exclude Quidel's general counsel. BD's counsel then reminded the court it had a motion for a protective order on calendar and again requested Quidel's motion to compel be deferred until the court ruled on that motion. The court denied the request.

After the hearing, the court granted Quidel's motion to compel on the grounds the documents were discoverable under Code of Civil Procedure section 2017.010. The order states that to "the extent [BD] believes [Quidel's] request seeks private, privileged, and confidential commercial, financial, and/or other proprietary business information . . . , those concerns can be addressed by the [Hoffman/Quidel Protective Order], which [BD] has failed to utilize." The order directed BD to produce the requested documents by August 29, 2014.

On August 26, 2014, BD filed a petition for writ of mandate seeking an immediate stay of the August 15th order until its motion for protective order is adjudicated. In its petition, BD contends the court erred by ordering it to produce confidential and trade secret information without conducting the required balancing test for the discovery of such information. BD also asserts the current protective order is insufficient to protect its

5

proprietary information because, even at its highest level of protection, Quidel's senior vice president of business development may view the document production.

We issued the requested stay temporarily, requested an informal response to the petition and issued *Palma* notice. (*Palma v. U.S. Industrial Fasteners*, *Inc.* (1984) 36 Cal.3d 171, 178.) Quidel filed an informal response to the petition on September 5, 2014.

DISCUSSION

I

Evidence Code section 1060 creates a privilege for trade secrets and authorizes the owner of a trade secret to refuse to disclose the secret "if the allowance of the privilege will not tend to conceal fraud or otherwise work injustice." In *Bridgestone/Firestone*, *Inc. v. Superior Court* (1992) 7 Cal.App.4th 1384 (*Bridgestone*) the court of appeal applied Evidence Code section 1060 in the context of civil discovery. The *Bridgestone* court held that it would be error to order disclosure of a trade secret simply because such information would be discoverable under the general standard for discovery of matter that " 'appears reasonably calculated to lead to the discovery of admissible evidence.' " (*Bridgestone*, *supra*, at p. 1390.) The standard set forth by Code of Civil Procedure section 2017.010 applies to matters that are *not* privileged.[3] (*Bridgestone*, *supra*, at pp. 1390-1391.)

---

[3] Code of Civil Procedure section 2017.010 provides, in pertinent part: "Unless otherwise limited by order of the court in accordance with this title, any party may obtain discovery regarding any matter, *not privileged*, that is relevant to the subject matter involved in the pending action or to the determination of any motion made in that action, if the matter either is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence." (Code Civ. Proc., § 2017.010, emphasis added.)

Evidence Code section 1060 requires the court to apply a heightened standard before compelling the disclosure of documents containing trade secrets. (*Bridgestone*, *supra*, 7 Cal.App.4th at p. 1393.) Under this standard, the party claiming the privilege must first establish the information sought is privileged. (*Ibid*.) If it does, then the "party seeking discovery must make a prima facie, particularized showing that the information sought is relevant and necessary to the proof of, or defense against, a material element of one or more causes of action presented in the case, and that it is reasonable to conclude that the information sought is essential to a fair resolution of the lawsuit." (*Ibid*.) If that showing is made, the burden shifts to "the holder of the privilege to demonstrate any claimed disadvantages of a protective order." (*Ibid*.)

II

BD contends the respondent court erroneously concluded no trade secrets were at issue because Quidel's only cause of action against Hoffman was for breach of contract. As a result, the court incorrectly applied the general standard for discovery of Code of Civil Procedure section 2017.010 rather than the heightened scrutiny required for protected trade secrets. We agree the trial court erred by summarily concluding no trade secrets were at issue and by failing to conduct the heightened review required for the production of such information.

Rather than determine if the trade secret privilege applied, the trial court concluded trade secrets were not at issue because Hoffman's only claim was for breach of contract. A claim of trade secret privilege, however, is not determined based on the claims asserted by the plaintiff. (See *Bridgestone*, *supra*, 7 Cal.App.4th at p. 1388 [applying trade secret privilege to information sought in wrongful death action based on

7

claim of negligent design and manufacture of tires]; and *Citizens of Humanity*, *LLC v. Costco Wholesale Corp.* (2009) 171 Cal.App.4th 1, 7 [applying privilege in case alleging the sale of stolen property under Penal Code section 496].)

Once BD asserted the requested information contained trade secrets, the trial court was required to determine whether it did.[4] (*Bridgestone*, *supra*, 7 Cal.App.4th at p. 1393.) If the documents contain protected trade secrets, then disclosure could be compelled only if Quidel demonstrated the information "is relevant and necessary to the proof of a material element" of its claim against Hoffman and that the information "is essential to a fair resolution of the lawsuit." (*Bridgestone*, *supra*, at p. 1393.) Here, rather than conduct this analysis, the court erroneously applied the general standard for discovery under Code of Civil Procedure section 2017.010.

The court's finding that any privileged information could be protected by the Hoffman/Quidel Protective Order was not an adequate substitute for use of the balancing test required under Evidence Code section 1060 for the disclosure of trade secrets. While a protective order is relevant to the determination of whether trade secret information is ultimately discoverable, the party seeking the protected information must first establish the information is directly relevant and necessary to its claims.[5] (*Bridgestone*, *supra*, 7 Cal.App.4th at p. 1393.) The court abused its discretion by requiring disclosure of the documents by BD subject to the Hoffman/Quidel Protective Order without first

---

4    While we express no opinion on the subject, many of the disputed requests, on their face, appear to seek information subject to the trade secret privilege. Notably, Quidel does not dispute the information it seeks is protected.

5    By suggesting the need for modification of the existing order, the court itself appears to have tacitly recognized its shortcomings.

conducting the analysis required for the disclosure of information protected by the trade secret privilege.

We also reject Quidel's contentions, set forth in its informal response to BD's writ petition, that (1) BD's motion for protective order is not relevant to the challenged order because BD's motion addresses only Quidel's July 18, 2014, subpoena and that (2) BD waived its right to seek a protective order because it did not seek an order at the outset of negotiations over the requested documents. Neither of these contentions is supported by the record before this court. BD's motion for a protective order explicitly refers to both subpoenas. Additionally, BD did not waive its right to seek a protective order. Rather, it maintained its objection to producing confidential trade secret information throughout its negotiations with Quidel.

Because the relief BD seeks will become moot if the protective order is heard before this court rules on its petition and because BD's entitlement to relief is clear and the law well-settled, we conclude a peremptory writ in the first instance is proper. (Code Civ. Proc., § 1088; *Alexander v. Superior Court* (1993) 5 Cal.4th 1218, 1222-1223; *Ng v. Superior Court* (1992) 4 Cal.4th 29, 35.)

9

DISPOSITION

Let a writ of mandate issue directing respondent to stay its order of August 15, 2014, until after it has heard and decided petitioner's pending motion for a protective order.  The stay previously issued by this court is vacated.

_____

IRION, J.

WE CONCUR:


_____

McCONNELL, P. J.


_____

BENKE, J.